FILED
JANUARY 23, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEMPER VALVE & FITTINGS CORP. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| BUDDY WOOD, KENNETH KLINGBAIL, FLOW VALVE, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**08 C 513**

**JUDGE GUZMAN**
**MAGISTRATE JUDGE NOLAN**

## COMPLAINT

Kemper Valve & Fittings Corp., by and through its undersigned counsel, brings this Complaint against Buddy Wood, Kenneth Klingbail and Flow Valve, LLC ("Defendants") and in support thereof states as follows:

### NATURE OF ACTION AND INTRODUCTION

1. This is a claim for relief under the laws of the State of Illinois, seeking damages from Defendants – both former employees of Kemper Valve & Fittings Corp. ("Kemper") – for their breach of covenants not to compete, trade secret misappropriation, breach of the duty of loyalty, civil conspiracy and tortious interference with prospective economic advantage.

2. On January 31, 2007, Buddy Wood ("Wood") suddenly resigned voluntarily from his position as a Kemper General Manager, a position in which he had been employed since January 1999. Wood gave no notice or reason for his abrupt resignation. On July 5, 2007, Kenneth Klingbail ("Klingbail") suddenly resigned voluntarily without notice from his position as Kemper's Engineering Manager. Klingbail had been employed at Kemper since November 1999. Klingbail told Kemper that he was moving to Houston, Texas because he allegedly had

bought a little company there. A few months prior to his resignation, Klingbail borrowed money from his Kemper profit sharing account for the stated reason that he was purchasing property near Wonder Lake, Illinois to build another home.

3. Within days after Wood left Kemper, in February 2007, his son-in-law, Chesley Tucker, also suddenly resigned from his employment at Kemper. Tucker immediately opened up a manufacturing representative agency that provides products and rebuild and recertification services competitive with Kemper called Flow Valve, LLC ("Flow Valve") in Sulphur, Oklahoma. On information and belief, Wood and Klingbail have provided either direct or indirect economic support and business guidance to Flow Valve.

4. Since their departures, both Wood and Klingbail have been visibly affiliated with the newly created competitor Flow Valve. On information and belief, Klingbail is a signatory on Flow Valve's business checking account and he is present during regular business hours at Flow Valve's current office location. Wood has been observed regularly at Flow Valve's past and present office locations. On information and belief, Wood also has been observed at business meetings representing Flow Valve.

5. Several Kemper employees have been solicited to work at Kerr Pump Corp. ("Kerr Pump") a pump manufacturer in Sulphur, Oklahoma. Kerr Pump and Flow Valve have operated out of the same location since approximately August 2007. On information and belief, Ed Nowell and Mark Nowell, Kerr Pumps owners, are authorized signatories, along with Klingbail, on Flow Valve's checking account at First National Bank & Trust.

6. The direct and indirect connections to Flow Valve; the direct and indirect participation in Flow Valve's operations; the direct and indirect solicitation of Kemper's customers for Flow Valve and potentially Kerr Pump; the conspiracy to attempt to hide their

improper business activities behind Flow Valve and/or Kerr Pump; the direct or indirect interference with Kemper's relationships with its employees; the threatened and inevitable disclosure of Kemper's confidential information and trade secrets all squarely violate the term of Defendants Wood's and Klingbail's Confidentiality and Non-Compete Agreements, both of which contain express position of loyalty, non-disclosure, non-competition, non-solicitation of customers and non-interference provisions signed and agreed to by Defendants, Wood and Klingbail (Wood and Klingbail Agreements, Exhibits A and B, respectively).

## PARTIES

7. Plaintiff Kemper is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 3001 Darrell Road, Island Lake, Illinois 60042.

8. Defendant Flow Valve is a limited liability company organized and existing under the laws of the State of Oklahoma with its principal place of business located at 2214 W. 14th Street, Sulphur, Oklahoma 73086.

9. Defendant Wood is an individual residing at 502 Cambridge, Sulphur, Oklahoma, 73086.

10. Defendant Klingbail is an individual residing at 3520 Tara Drive, Ardmore, Oklahoma 73401.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the claims arising under the laws of the State of Illinois under 28 U.S.C. §1332 based upon the diversity of citizenship between Kemper and all named Defendants and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

12. Venue is proper in this judicial district under 28 U.S.C. §1391(a). In addition, Kemper, Wood and Klingbail have agreed that the Wood and Klingbail Agreements are regarded for all purposes as Illinois documents and the validity and construction and all acts and payments thereunder shall be determined and governed, in all aspects, by the laws of the State of Illinois.

### The Confidentiality and Non-Compete Agreements
### Wood and Klingbail Signed

13. Kemper manufactures and markets oilfield flow control products including complete lines of hammer unions, pit unions, swivel joints, pup joints, hose loops, check valves, relief valves and other flow line related fittings. Kemper has two branch facilities in Sulphur, Oklahoma. Kemper builds manifold trailers, assembles swivel joints and rebuilds and recertifies flow iron at one Sulphur facility. The other facility is a machine shop at which Kemper manufactures pup joints and some crossover fittings.

14. Klingbail joined Kemper in November 1999 as an Engineer. He subsequently was promoted to Kemper's Engineering Manager at Kemper's corporate headquarters. As Kemper's Engineering Manager, Klingbail had access to numerous trade secrets belonging to Kemper. The trade secrets included Kemper's engineering designs, details and information about the unique products it was developing, the unique processes that were to be employed to manufacture those products, formulas, market analyses, customer lists, proprietary new product concepts, operating costs, pricing information, drawings, processes and other technical and non-technical data.

15. Wood joined Kemper in January 1999 as its General Manager for the Sulphur, Oklahoma facilities. Prior to joining Kemper, Wood owned a small company that repaired and refurbished valves and swivel joints. Kemper purchased Wood's company when he joined Kemper. Wood subsequently became Kemper's National Sales Manager for Kemper's Flow

Control line of products. While Wood was a Kemper employee, Kemper invested significant sums of money and resources to develop a unique product known as a manifold trailer. While a Kemper employee, Wood had access to numerous trade secrets belonging to Kemper including Kemper's business plans, market analyses, details and information about the unique products it was developing, the unique processes that are to be employed to manufacture these products, customer lists, proprietary new product concepts, pricing information, drawings, processes and other technical and non-technical data.

16. On March 7, 2001, Wood acknowledged that he was a Key Executive of Kemper and he accepted the opportunity to participate in Kemper's Incentive Compensation Plan ("ICP"). Section 5.2 of the ICP contained a forfeiture provision in the event a participant violates or breaches any of the provisions in Kemper's Confidentiality and Non-Compete Agreement. As consideration for continued employment and participation in the ICP, Wood executed a Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement ("Wood Agreement" attached hereto as Exhibit A).

Section 2(d) of the Wood Agreement provides:

> (d) <u>Non-Competition</u>. During Employee's employment with the Company, and for a period of two (2) years following termination of Employee's employment with the Company for any reason whatsoever (or, if this period shall be unenforceable by law, then for such lesser period as shall be required by law to make the provisions of this subparagraph enforceable), Employee shall not, in any state of the United States or in any foreign country where the Company is conducting its business, without the express written consent of the Company, directly or indirectly, own, manager, participate in or otherwise engage in or have any connection with any business which provides any product or service now or at any time provided by the Company during Employee's employment with the Company except that Employee shall not be precluded hereby from (i) owning stock or any other securities in a publicly traded company where such investment entitles Employee to less than 1% of the voting control over such

5

company, or (ii) working as an employee, after the termination of Employee's employment with the Company, for any entity in which Employee has no ownership interest, or option or other right to acquire an ownership interest, in any capacity where the likelihood of Employee's breach or violation of the provisions of subparagraphs (b) and (f) is demonstrated to the reasonable satisfaction of the company to be remote.

17. During his employment and for the two years thereafter, Wood also agreed, among other things, not to:

(a) directly or indirectly solicit any of the top twenty customers during the preceding two years for any product or service competitive with a product or service Kemper sold (¶2(e); or

(b) directly or indirectly induce or encourage any employee of Kemper to leave his or her employment (¶2(f).

18. Wood also acknowledged in the Wood Agreement as consideration for the ICP and his continued employment that he was in a position of loyalty in which he had access to Kemper's Confidential Information as described therein (*Id.* at ¶2(a)) and that he would not communicate or divulge directly or indirectly during his employment or thereafter Kemper's Confidential Information learned during the course of his employment (*Id.* at ¶2(b)).

19. On April 19, 2001, Klingbail acknowledged he was a Key Executive of Kemper and he accepted the opportunity to participate in Kemper's ICP. As consideration for continued employment and participation in the ICP, Klingbail executed a Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement ("Klingbail Agreement" attached hereto as Exhibit B). The terms, conditions and obligations in the Klingbail Agreement are identical to the Wood Agreement.

20. The ICP was amended and restated on October 1, 2004.

21. Effective October 1, 2004, Kemper adopted the Kemper Valve & Fittings Corp. 2004 Stock Appreciation Plan ("SAR"). Kemper established the SAR to attract and retain high

6

caliber management and technical personnel, to motivate participants to achieve long-term goals and to align participant's interests with those of Kemper's. Wood became a participant in the SAR. Section 7 of the SAR contained a forfeiture provision in the event a participant violates or breaches any provisions in Kemper's Confidentiality and Non-Compete Agreement.

### Wood and Klingbail Attempt to Hide Their Violations Through Flow Valve and Kerr Pump

22. Tucker, Wood's son-in-law, was a lower level planner and was paid hourly at Kemper's Sulphur facility. Tucker did not participate in the ICP or SAR nor was he required to sign a Confidentiality and Non-Compete Agreement during his employment.

23. Within days after Wood abruptly resigned, Tucker resigned. He immediately opened up Flow Valve and was a manufacturer's representative for several of Kemper's competitors.

24. Flow Valve initially operated out of a warehouse located at 2410 W. Broadway in Sulphur, Oklahoma, a property owned by Wood.

25. In or around August 2007, shortly after Klingbail resigned, on information and belief, Flow Valve moved its operations to the corporate headquarters of Kerr Pump located at 2214 W. 14th Street in Sulphur, Oklahoma. Both Flow Valve and Kerr Pump appear to operate together within a single dwelling, with both of their corporate flags displayed prominently outside the building.

26. On information and belief, Kerr Pump has either already purchased or has agreed to purchase a portion of Flow Valve. Wood is the manager-in-fact of Flow Valve's operations despite what any corporate records may state.

27. On information and belief, Wood, in an attempt to hide his conduct in violation of his obligations under the Confidentiality and Non-Compete Agreement, assisted Tucker in all

material respects in setting up Flow Valve, in affiliating Flow Valve with Kerr Pump and by disclosing, threatening to disclose or inevitably disclosing the Confidential Information he acquired at Kemper in setting up Flow Valve to compete with Kemper.

28. On information and belief, Wood has represented Flow Valve on sales calls for products and services that compete with Kemper.

29. On information and belief, Wood has represented Flow Valve at meetings with customers to which Kemper provides products and services.

30. On information and belief, Wood, acting through Flow Valve, has diverted business opportunities from Kemper to Flow Valve.

31. On information and belief, Wood has represented Flow Valve in the sales of valves distributed by Flow Valve.

32. On information and belief, Wood has used information acquired during his employment with Kemper to help one of Kemper's competitors build and market manifold trailers using Kemper's design and Confidential Information that would compete with Kemper's product.

33. On information and belief, Klingbail will inevitably disclose the trade secrets he acquired as Kemper's Engineering Manager in his position with Flow Valve and/or Kerr Pump.

34. Because Defendants Wood and Klingbail have attempted purposefully to hide their violations of the non-compete and other provisions in their Agreements through Flow Valve, Kemper cannot specify the precise relationship between Flow Valve and Kerr Pump. On information and belief, Kerr Pump is providing support and resources to Flow Valve, and may even own a portion of Flow Valve as evidenced by the fact that Flow Valve moved into Kerr Pump's corporate headquarters in and around August 2007. Both Wood and Klingbail are

present at the Flow Valve/Kerr Pump facility during regular business hours on virtually a daily basis and are connected with and are assisting Flow Valve's operations, directly or indirectly, in violation of the Wood and Klingbail Agreements.

35. On information and belief, Ed Nowell and Mark Nowell, Kerr Pumps owners, are authorized signatories along with Klingbail, on Flow Valve's checking account at First National Bank & Trust in Sulphur, Oklahoma.

36. On information and belief, Both Wood and Klingbail now work directly or indirectly for Flow Valve. This is a clear violation of the covenants not to compete in the Wood and Klingbail Agreements.

37. Wood further breached his contract by soliciting Klingbail to leave Kemper to work for Flow Valve and/or Kerr Pump.

38. On information and belief, both Wood and Klingbail have solicited indirectly other employees of Kemper to leave Kemper to work for Flow Valve and/or Kerr Pump. Such solicitation also violates the Wood and Klingbail Agreements.

39. On information and belief, Wood and Klingbail have solicited Kemper's customers in flagrant disregard of their contractual agreements.

40. On information and belief, Wood and Klingbail used their knowledge of Kemper's proprietary, trade secret information unfairly to compete with Kemper on behalf of Defendant Flow Valve.

## COUNT I

### WRONGFUL MISAPPROPRIATION OF TRADE SECRETS BY ALL DEFENDANTS

41. Kemper repeats and realleges each of the allegations contained in Paragraphs 1 through 40 as if fully set forth herein.

9

42. Pursuant to Wood's and Klingbail's Agreements, Kemper provided Wood and Klingbail with confidential and proprietary information, including but not limited to trade secrets and customer lists ("Confidential Information") belonging to Kemper.

43. Defendants knowingly violated the Wood and Klingbail Agreements by using the Confidential Information for their own benefit and for the benefit of Flow Valve and/or Kerr Pump, a competing entity. Such use of this information constitutes misappropriation of trade secrets in violation of the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1 *et seq.*

44. Wood and Klingbail's positions with Flow Valve and/or Kerr Pump create a high degree of probability of inevitable and immediate use of trade secrets.

45. Kemper's Confidential Information is not generally known outside of Kemper's business.

46. Kemper's Confidential Information has economic value, actual and potential, from not being generally known to its competitors and outside persons.

47. Kemper maintains measures to guard the secrecy of its Confidential Information.

48. Kemper has expended significant amounts of money to develop unique products, such as its manifold trailer, its bending device and its Flow Control line and related engineering drawings, about which Defendants are aware.

49. Kemper's manifold trailer and its unique Flow Control line and engineering drawings could not be easily duplicated by others without knowing Kemper's Confidential Information. Kemper's proprietary data and technical information is missing for its unique bending device for which Klingbail had custody and control.

50. As a result of the wrongful actions of Defendants, Kemper has suffered damages, the precise amount of which cannot be determined at this time.

51. The Defendants' willful and malicious misappropriation of Kemper's trade secrets entitle it to damages, including punitive damages, pursuant to the Illinois Trade Secrets Act in amounts yet to be determined.

## COUNT II

### BREACH OF COVENANT NOT TO COMPETE BY KLINGBAIL

52. Kemper repeats and realleges each of the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

53. Klingbail was a Key Executive of Kemper and in consideration for continued employment and special incentive compensation benefits entered into a written Confidentiality and Non-Compete Agreement, which includes a non-competition covenant.

54. Klingbail's Agreement, which contains certain activity restrictions including the covenant not to compete, is reasonable, valid, and binding.

55. In violation of the covenant not to compete, Klingbail has been directly and indirectly participating in, engaging in, or otherwise has been connected with Flow Valve, both during his employment with Kemper and thereafter and upon information and belief, did compete (and continues to compete) with Kemper at a minimum, assisting Flow Valve and/or Kerr Pump in the design of products and services that compete with Kemper.

56. In particular, on information and belief, Klingbail, through Flow Valve, has persuaded or attempted to persuade Kemper's customers to cease doing business with Kemper, or to reduce the amount of business such customers did with Kemper and move their business to Flow Valve, in violation of the Agreement and covenant not to compete.

57. In violation of the activity restriction embodied in the covenant not to compete, Klingbail now serves in some business capacity to Flow Valve by reason of his being, at a

minimum, an authorized signatory on Flow Valve's bank account. Thus, Klingbail owns, manages, operates, controls, is employed by or participates in the ownership, management, operation or control of, or is connected with a business which provides the product or services provided by Kemper and is competitive with Kemper.

58. Also in violation of the covenant not to compete: A) Klingbail, by and through Flow Valve, has solicited Kemper's customers; B) Klingbail, through Kerr Pump, has solicited and has enticed employees to leave Kemper to work for Flow Valve and/or Kerr Pump; C) Klingbail misappropriated Kemper's trade secrets and threatens to inevitably disclose Kemper's trade secrets by reason of his position; and D) Klingbail has used Kemper's trade secrets individually and/or by and through Flow Valve and/or Kerr Pump.

59. On information and belief, Klingbail's duties with Flow Valve and/or Kerr Pump are substantially the same as those duties he had when employed by Kemper. Therefore, Klingbail can easily and inevitably utilize his knowledge of Kemper's Confidential Information in his performance at Flow Valve and/or Kerr Pump, to the benefit of himself and Flow Valve and/or Kerr Pump and to the detriment of Kemper.

60. As a result of Klingbail's violations of his covenant not to compete, Kemper has suffered substantial damages in an amount yet to be determined but believed to be over $75,000.

## COUNT III

### BREACH OF COVENANT NOT TO COMPETE BY WOOD

61. Kemper repeats and realleges each of the allegations contained in Paragraphs 1 through 60 as if fully set forth herein.

62. Wood was a Key Executive of Kemper and in consideration for continued employment and special incentive compensation benefits entered into a written Confidentiality and Non-Compete Agreement, which includes a non-competition covenant.

63. Wood's Agreement, which contains certain activity restrictions, including the covenant not to compete, is reasonable, valid, and binding.

64. In violation of the covenant not to compete, Wood has been directly and indirectly participating in, engaging in, or has otherwise has been connected with Flow Valve, and upon information and belief, did compete (and continues to compete) with Kemper at a minimum, by diverting and attempting to divert Kemper's customers and business opportunities from Kemper to Flow Valve and/or Kerr Pump.

65. In particular, on information and belief, Wood, through Flow Valve, has persuaded or attempted to persuade Kemper's customers to either cease doing business with Kemper, or to reduce the amount of business such customers did with Kemper, such as Halliburton, in violation of the Agreement and covenant not to compete.

66. In violation of the covenant not to compete, Wood now serves in some business capacity to Flow Valve by reason of his representing Flow Valve at business meetings, accompanying Tucker on customer calls and at customer meetings, by providing consulting services to a competitor on how to manufacture manifold trailers, and by attempting to sell products on behalf of Flow Valve.

67. Also in violation of the covenant not to compete: A) Wood, by and through Flow Valve, and/or Kerr Pump has solicited Kemper's customers; B) Wood, through Flow Valve and/or Kerr Pump, has solicited and has enticed employees to leave Kemper to work for Flow Valve and/or Kerr Pump; C) Wood misappropriated Kemper's trade secrets and threatens to

inevitably disclose Kemper's trade secrets by reason of his position; and D) Wood has used Kemper's trade secrets individually and/or by and through Flow Valve and/or Kerr Pump.

68.     Wood's duties with Flow Valve and/or Kerr Pump are substantially the same as the duties he had when employed by Kemper. Therefore, Wood can easily utilize his knowledge of Kemper's Confidential Information in his performance at Flow Valve and/or Kerr Pump, to the benefit of himself and Flow Valve and/or Kerr Pump and to the detriment of Kemper.

69.     As a result of Wood's breach of his non-competition provision, Kemper has suffered substantial damages in an amount yet to be determined but believed to be over $75,000.

## COUNT IV

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS BY DEFENDANTS WOOD AND FLOW VALVE

70.     Kemper repeats and realleges Paragraphs 1 through 69 as though set forth herein.

71.     Defendants Wood and Flow Valve were aware of Klingbail's Agreement at the time that Wood and Flow Valve induced Klingbail to leave Kemper and work for Flow Valve, and steal Kemper's Confidential Information.

72.     Nonetheless, as Kemper's competitor and despite this knowledge, Defendants Wood and Flow Valve intentionally and unjustifiably induced Klingbail to breach the Klingbail Agreement.

73.     Furthermore, Flow Valve and Wood were aware that Klingbail was engaged in a business relationship with Kemper as its employee.

74.     Nonetheless, Flow Valve and Wood sought to interfere with the business relationship between Klingbail and Kemper by inducing him to seek employment with Flow Valve, and steal Kemper's Confidential Information.

75. Defendants were aware of the Wood and Klingbail Agreements, at the time that Defendants indirectly solicited at least one other employee to leave Kemper and work for Flow Valve and/or Kerr Pump; steal Kemper's Confidential Information; and steal Kemper's customers.

76. As a result of Flow Valve's and Wood's inducement, Klingbail terminated his employment with Kemper, and took a job with Flow Valve and/or Kerr Pump in violation of the Klingbail Agreement.

77. Defendants have intentionally and unjustifiably attempted, through Flow Valve and/or Kerr Pump, to induce others to leave Kemper to work for Flow Valve and/or Kerr Pump as well, even though Defendants were aware that these others were engaged in a business relationship with Kemper as its employees.

78. Moreover, Defendants sought to interfere with the business relationship between these others and Kemper by soliciting them to seek employment with Flow Valve and/or Kerr Pump, and steal Kemper's Confidential Information;

79. As a result of Defendants' inducement, at least one key Kemper employee has terminated his employment with Kemper, and taken a job with Flow Valve and/or Kerr Pump.

80. As a result of Defendants' actions, Kemper has suffered and will continue to suffer substantial loss and damages, which amount cannot be determined at this time.

## COUNT V

### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY BY WOOD AND FLOW VALVE

81. Kemper repeats and realleges Paragraphs 1 through 80 as though set forth herein.

82. At least three of Kemper's customers have greatly reduced their business with Kemper since Wood left Kemper and affiliated with Flow Valve, breached the Wood Agreement, and misappropriated Kemper's Confidential Information.

83. Based on a past history with these customers, Kemper had a valid business expectancy that its work with the customers would continue and grow.

84. Wood was aware of Kemper's business expectancy because Wood personally worked with these three particular customers when he was employed by Kemper.

85. Wood intentionally and unjustifiably interfered with Kemper's business expectancy preventing the realization of the business expectancy to Kemper.

86. As a result of Defendants' actions, Kemper has suffered and will continue to suffer substantial loss and damages. As Defendants have knowledge and possession of Kemper's Confidential Information, it has an unfair competitive advantage to interfere with Kemper's opportunities to acquire new customers and/or new contacts with Kemper's existing customers.

## COUNT VI

### BREACH OF THE DUTY OF LOYALTY BY KLINGBAIL

87. Kemper repeats and realleges Paragraphs 1 through 86 as though set forth herein.

88. Klingbail was an Engineering Manager for Kemper with significant managerial responsibilities for the operation of Kemper's Engineering Department.

89. As an Engineering Manager for Kemper, Klingbail acknowledged his position of loyalty in the Klingbail Agreement and owed a duty of loyalty to Kemper to not actively exploit his position within the corporation for his own personal benefit or to hinder the ability of Kemper to continue the business, or a subset thereof, for which it was developed.

90. On information and belief, Klingbail breached this duty and position of loyalty before tendering his resignation by providing guidance to Flow Valve while he worked for Kemper, and by misappropriating Kemper's Confidential Information for use by Flow Valve and/or Kerr Pump.

91. Klingbail breached this position and duty of loyalty after his resignation by actively exploiting his position with Kemper to his own benefit by using the information acquired while he was an employee for the benefit of Flow Valve and/or Kerr Pump.

92. As a result of Klingbail's breach of loyalty, Kemper has suffered and continues to suffer substantial damages, the amount of which cannot be determined at this time.

## COUNT VII

### BREACH OF THE DUTY OF LOYALTY BY WOOD

93. Kemper repeats and realleges Paragraphs 1 through 92 as though set forth herein.

94. Wood was the General Manager for Kemper's Sulphur facility and the National Sales Manager for Kemper's Flow Control line.

95. As an employee and agent of Kemper, Wood occupied a position of loyalty as acknowledged in the Wood Agreement and owed a duty of loyalty to Kemper to not compete with Kemper or a subset thereof in contraction of the Wood Agreement. Wood also owed a duty of loyalty to Kemper to not actively exploit his position within the corporation for his own personal benefit or to hinder the ability of Kemper to continue the business, or a subset thereof, for which it was developed.

96. Wood breached this position and duty of loyalty before tendering his resignation by assisting Tucker, his son-in-law, with opening a competing business, by diverting Kemper's

17

business and customers to Flow Valve, and by soliciting at least one Kemper employee to leave Kemper and join Flow Valve and/or Kerr Pump.

97. Wood breached this position and duty of loyalty after his resignation by actively exploiting his position with Kemper for his own benefit by using the information acquired while he was an employee for the benefit of Flow Valve and/or Kerr Pump.

98. As a result of Wood's breach of loyalty, Kemper has suffered and continues to suffer substantial damages, the amount of which cannot be determined at this time.

## COUNT VIII

### CIVIL CONSPIRACY BY ALL DEFENDANTS

99. Kemper repeats and realleges Paragraphs 1 through 98 as though set forth herein.

100. On information and belief, Wood and Klingbail are direct or indirect employees of Flow Valve and/or Kerr Pump, and are former employees and Key Executives of Kemper.

101. On information and belief, while employed by Kemper, Wood and Klingbail agreed to create a manufacturer's representative agency that would compete with Kemper, solicit and divert Kemper's customers, hire Kemper employees, and use Kemper's trade secrets and Confidential Information to compete unfairly with Kemper and to steal Kemper's trade secrets and business opportunities.

102. In furtherance of this Agreement, Wood directed his son-in-law to incorporate Flow Valve and Wood arranged for Flow Valve to become affiliated with Kerr Pump, Wood provided the initial space from which Flow Valve could operate and Wood prepared the business to be ready to begin operations. On information and belief, Wood and Klingbail, along with Kerr Pump, have provided economic and business operations support to Flow Valve.

103.　Kemper has been injured because of these overt acts performed by Wood and Klingbail, the amount of which will be determined at a later time.

104.　Wood and Klingbail acted in concert and the overt acts were done in furtherance of and pursuant to the common scheme of trade secret misappropriation, tortious interference with business expectancy, seizure of business opportunity, tortious interference with Kemper's business relationships, and breach of Wood's and Klingbail's positions and duties of loyalty to Kemper.

WHEREFORE, Kemper prays for the following relief:

A) Damages, in an amount to be determined at trial, for the wrongful misappropriation of Kemper's Confidential Information; for violations of the activity restricted in the Wood and Klingbail's Agreements; for Wood and Klingbail's breaches of the duty of loyalty they owed to their employer; for stealing Kemper's employees; for tortiously interfering with Kemper's business; for conspiring to tortiously interfere with Kemper's business relationships and misappropriate Kemper's trade secrets; and for soliciting and appropriating Kemper's customers;

B) A preliminary and permanent injunction pursuant to Section 3 of the Illinois Trade Secrets Act prohibiting Defendants from disclosing or otherwise using Kemper's trade secrets and Confidential Information acquired in the course of their employment with Kemper;

C) Compensatory and punitive damages against Defendants as a result of their willful misconduct; and

D)  Attorneys fees and costs to the extent recovery is permitted under the Illinois Trade Secrets Act and applicable law; and

E)  Such further relief as the Court may deem just and appropriate.

Dated: January 23, 2008

Respectfully submitted,

s/Davi L. Hirsch
One of their Attorneys
DAVI L. HIRSCH (Atty. #06182757)
DANIEL R. MADOCK (Atty. #6192393)
JOSHUA D. HOLLEB (Atty. #6185409)
KLEIN DUB & HOLLEB, LTD.
660 LaSalle Place, Suite 100
Highland Park, IL  60035
Phone: (847) 681-9100
Fax: (847) 681-1600
dlh@labor-law.com
drm@labor-law.com
jdh@labor-law.com

*Attorneys for Defendants*

K:\Kemper Valve & Fittings Corp\Oklahoma Litigation\Documents\Complaint 1.18.08.doc