IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEMPER VALVE & FITTINGS CORP. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 513 |
| | ) | |
| BUDDY WOOD, KENNETH KLINGBAIL, | ) | Honorable Judge Guzman |
| FLOW VALVE, LLC, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendants. | ) | Jury Demanded |

## DEFENDANT BUDDY WOOD'S ANSWER TO
## PLAINTIFF'S AMENDED COMPLAINT

Comes now Buddy Wood, Defendant herein ("Defendant") and responds to Plaintiff's

Amended Complaint as follows:

## NATURE OF ACTION AND INTRODUCTION

1.     This is a claim for relief under the laws of the State of Illinois, seeking damages

from Defendants – both former employees of Kemper Valve & Fittings Corp. ("Kemper") – for

their breach of covenants not to compete, trade secret misappropriation, breach of the duty of

loyalty, civil conspiracy and tortious interference with prospective economic advantage.

**ANSWER:**     Defendant denies the allegations in paragraph 1. of Plaintiff's Amended

Complaint.

2.     On January 31, 2007, Buddy Wood ("Wood") suddenly resigned voluntarily from

his position as a Kemper General Manager, a position in which he had been employed since

January 1999.  Wood gave no notice or reason for his abrupt resignation.  On July 5, 2007,

Kenneth Klingbail ("Klingbail") suddenly resigned voluntarily without notice from his position

as Kemper's Engineering Manager.  Klingbail had been employed at Kemper since November

1999. Klingbail told Kemper that he was moving to Houston, Texas because he allegedly had bought a little company there. A few months prior to his resignation, Klingbail borrowed money from his Kemper profit sharing account for the stated reason that he was purchasing property near Wonder Lake, Illinois to build another home.

**ANSWER**:   Defendant denies that Wood and Klingbail resigned without giving notice or reasons for their resignations. Defendant admits the other allegations in paragraph 2. of Plaintiff's Amended Complaint.

3.      Within days after Wood left Kemper, in February 2007, his son-in-law, Chesley Tucker, also suddenly resigned from his employment at Kemper. Tucker immediately opened up a manufacturing representative agency that provides products and rebuild and recertification services competitive with Kemper called Flow Valve, LLC ("Flow Valve") in Sulphur, Oklahoma. On information and belief, Wood and Klingbail have provided either direct or indirect economic support and business guidance to Flow Valve.

**ANSWER**:   Defendant denies that Klingbail has provided economic support and business guidance to Flow Valve, LLC. Defendant admits that he has provided a loan to Flow Valve and rented a building to Flow Valve but denies that he has provided any other economic support to Flow Valve. Defendant admits the other allegations in paragraph 3.of Plaintiff's Amended Complaint.

4.      Since their departures, both Wood and Klingbail have been visibly affiliated with the newly created competitor Flow Valve. On information and belief, Klingbail is a signatory on Flow Valve's business checking account and he is present during regular business hours at Flow Valve's current office location. Wood has been observed regularly at Flow Valve's past and

2

present office locations. On information and belief, Wood also has been observed at business meetings representing Flow Valve.

**ANSWER**: Defendant admits that Klingbail is a signatory on Flow Valve's business checking account and he is present during regular business hours at Flow Valve's current office location. Defendant also admits that he often visits Flow Valve's present location. Defendant is without sufficient knowledge to admit or deny the other allegations in paragraph 4. of Plaintiff's Amended Complaint.

5.     Several Kemper employees have been solicited to work at Kerr Pump Corp. ("Kerr Pump") a pump manufacturer in Sulphur, Oklahoma. Kerr Pump and Flow Valve have operated out of the same location since approximately August 2007. On information and belief, Ed Nowell and Mark Nowell, Kerr Pumps owners, are authorized signatories, along with Klingbail, on Flow Valve's checking account at First National Bank & Trust.

**ANSWER**: Defendant denies that several Kemper employees have been solicited to work at Kerr Pump Corp. ("Kerr Pump"). Defendant admits the remaining allegations in paragraph 5. of Plaintiff's Amended Complaint.

6.     The direct and indirect connections to Flow Valve; the direct and indirect participation in Flow Valve's operations; the direct and indirect solicitation of Kemper's customers for Flow Valve and potentially Kerr Pump; the conspiracy to attempt to hide their improper business activities behind Flow Valve and/or Kerr Pump; the direct or indirect interference with Kemper's relationships with its employees; the threatened and inevitable disclosure of Kemper's confidential information and trade secrets all squarely violate the term of Defendants Wood's and Klingbail's Confidentiality and Non-Compete Agreements, both of which contain express position of loyalty, non-disclosure, non-competition, non-solicitation of

3

customers and non-interference provisions signed and agreed to by Defendants, Wood and Klingbail (Wood and Klingbail Agreements, Exhibits A and B, respectively).

**ANSWER**:      Defendant denies the allegations in paragraph 6. of Plaintiff's Amended Complaint.

## PARTIES

7.      Plaintiff Kemper is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located at 3001 Darrell Road, Island Lake, Illinois 60042.

**ANSWER**:      Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 7. of Plaintiff's Amended Complaint.

8.      Defendant Flow Valve is a limited liability company organized and existing under the laws of the State of Oklahoma with its principal place of business located at 2214 W. 14th Street, Sulphur, Oklahoma 73086.

**ANSWER**:      Defendant admits the allegations in paragraph 8. of Plaintiff's Amended Complaint.

9.      Defendant Wood is an individual residing at 502 Cambridge, Sulphur, Oklahoma, 73086.

**ANSWER**:      Defendant admits the allegations in paragraph 9. of Plaintiff's Amended Complaint.

10.      Defendant Klingbail is an individual residing at 3520 Tara Drive, Ardmore, Oklahoma 73401.

**ANSWER**:      Defendant admits the allegations in paragraph 10. of Plaintiff's Amended Complaint.

4

### JURISDICTION AND VENUE

11.    This Court has jurisdiction over the claims arising under the laws of the State of Illinois under 28 U.S.C. §1332 based upon the diversity of citizenship between Kemper and all named Defendants and the amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

**ANSWER**:    Defendant denies that this Court has personal jurisdiction over Flow Valve, LLC.  Defendant admits the other allegations in paragraph 11. of Plaintiff's Amended Complaint.

12.    Venue is proper in this judicial district under 28 U.S.C. §1391(a).  In addition, Kemper, Wood and Klingbail have agreed that the Wood and Klingbail Agreements are regarded for all purposes as Illinois documents and the validity and construction and all acts and payments thereunder shall be determined and governed, in all aspects, by the laws of the State of Illinois.

**ANSWER**:    Defendant admits that venue is proper in this district as to him.  Defendant denies the other allegations in paragraph 12. of Plaintiff's Amended Complaint.

### The Confidentiality and Non-Compete Agreements
### Wood and Klingbail Signed

13.    Kemper manufactures and markets oilfield flow control products including complete lines of hammer unions, pit unions, swivel joints, pup joints, hose loops, check valves, relief valves and other flow line related fittings.  Kemper has two branch facilities in Sulphur, Oklahoma.  Kemper builds manifold trailers, assembles swivel joints and rebuilds and recertifies flow iron at one Sulphur facility.  The other facility is a machine shop at which Kemper manufactures pup joints and some crossover fittings.

5

**ANSWER**:    Defendant admits the allegations in paragraph 13. of Plaintiff's Amended Complaint.

14.    Klingbail joined Kemper in November 1999 as an Engineer.  He subsequently was promoted to Kemper's Engineering Manager at Kemper's corporate headquarters.  As Kemper's Engineering Manager, Klingbail had access to numerous trade secrets belonging to Kemper.  The trade secrets included Kemper's engineering designs, details and information about the unique products it was developing, the unique processes that were to be employed to manufacture those products, formulas, market analyses, customer lists, proprietary new product concepts, operating costs, pricing information, drawings, processes and other technical and non-technical data.

**ANSWER**:    Defendant admits that Klingbail joined Kemper in November 1999 as an engineer and was promoted to Plaintiff's Engineering Manager at Plaintiff's corporate headquarters and that he had access to Plaintiff's information.  Defendant denies that such information were trade secrets and denies the allegation of what constitutes trade secrets in paragraph 14. of Plaintiff's Amended Complaint.

15.    Wood joined Kemper in January 1999 as its General Manager for the Sulphur, Oklahoma facilities.  Prior to joining Kemper, Wood owned a small company that repaired and refurbished valves and swivel joints.  Kemper purchased Wood's company when he joined Kemper.  Wood subsequently became Kemper's National Sales Manager for Kemper's Flow Control line of products.  While Wood was a Kemper employee, Kemper invested significant sums of money and resources to develop a unique product known as a manifold trailer.  While a Kemper employee, Wood had access to numerous trade secrets belonging to Kemper including Kemper's business plans, market analyses, details and information about the unique products it

6

was developing, the unique processes that are to be employed to manufacture these products, customer lists, proprietary new product concepts, pricing information, drawings, processes and other technical and non-technical data.

**ANSWER**:    Defendant denies the descriptions of what constitutes trade secrets belonging to Kemper and denies that the manifold trailer was a unique product and that the manufacturing processes used were unique to Plaintiff.    Defendant admits the remaining allegations in paragraph 15. of Plaintiff's Amended Complaint.

16.    On March 7, 2001, Wood acknowledged that he was a Key Executive of Kemper and he accepted the opportunity to participate in Kemper's Incentive Compensation Plan ("ICP"). Section 5.2 of the ICP contained a forfeiture provision in the event a participant violates or breaches any of the provisions in Kemper's Confidentiality and Non-Compete Agreement. As consideration for continued employment and participation in the ICP, Wood executed a Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement ("Wood Agreement" attached hereto as Exhibit A).

Section 2(d) of the Wood Agreement provides:

> (d)  Non-Competition.  During Employee's employment with the Company, and for a period of two (2) years following termination of Employee's employment with the Company for any reason whatsoever (or, if this period shall be unenforceable by law, then for such lesser period as shall be required by law to make the provisions of this subparagraph enforceable), Employee shall not, in any state of the United States or in any foreign country where the Company is conducting its business, without the express written consent of the Company, directly or indirectly, own, manage, participate in or otherwise engage in or have any connection with any business which provides any product or service now or at any time provided by the Company during Employee's employment with the Company except that Employee shall not be precluded hereby from (i) owning stock or any other securities in a publicly traded company where such investment

7

entitles Employee to less than 1% of the voting control over such company, or (ii) working as an employee, after the termination of Employee's employment with the Company, for any entity in which Employee has no ownership interest, or option or other right to acquire an ownership interest, in any capacity where the likelihood of Employee's breach or violation of the provisions of subparagraphs (b) and (f) is demonstrated to the reasonable satisfaction of the company to be remote.

**ANSWER**:     Defendant denies that he voluntarily accepted the opportunity to participate in Kemper's Incentive Compensation Plan or that there was proper consideration given for signing the Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement but otherwise admits the allegations in paragraph 16. of Plaintiff's Amended Complaint.

17.     During his employment and for the two years thereafter, Wood also agreed, among other things, not to:

>   (a)     directly or indirectly solicit any of the top twenty customers during the preceding two years for any product or service competitive with a product or service Kemper sold (¶2(e)); or
>
>   (b)     directly or indirectly induce or encourage any employee of Kemper to leave his or her employment (¶2(f)).

**ANSWER**:     Defendant admits that the Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement ("Non-Compete Agreement") contained the provisions as alleged in paragraph 17. of Plaintiff's Amended Complaint but denies the remaining allegations in paragraph 17 of Plaintiff's Amended Complaint.

18.     Wood also acknowledged in the Wood Agreement as consideration for the ICP and his continued employment that he was in a position of loyalty in which he had access to Kemper's Confidential Information as described therein (*Id.* at ¶2(a)) and that he would not

communicate or divulge directly or indirectly during his employment or thereafter Kemper's Confidential Information learned during the course of his employment (*Id.* at ¶2(b)).

**ANSWER**: Defendant admits that the Non-Compete Agreement signed by Wood contained the provisions as described in paragraph 18. of Plaintiff's Amended Complaint but denies the other allegations in paragraph 18 of Plaintiff's Amended Complaint.

19.    On April 19, 2001, Klingbail acknowledged he was a Key Executive of Kemper and he accepted the opportunity to participate in Kemper's ICP. As consideration for continued employment and participation in the ICP, Klingbail executed a Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement ("Klingbail Agreement" attached hereto as Exhibit B). The terms, conditions and obligations in the Klingbail Agreement are identical to the Wood Agreement.

**ANSWER**: Defendant denies that Klingbail voluntarily accepted the opportunity to participate in Kemper's Incentive Compensation Plan or that there was proper consideration given for Klingbail signing a Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement. Defendant admits the other allegations in paragraph 19. of Plaintiff's Amended Complaint.

20.    The ICP was amended and restated on October 1, 2004.

**ANSWER**: Defendant admits the allegations in paragraph 20. of Plaintiff's Amended Complaint.

21.    Effective October 1, 2004, Kemper adopted the Kemper Valve & Fittings Corp. 2004 Stock Appreciation Plan ("SAR"). Kemper established the SAR to attract and retain high caliber management and technical personnel, to motivate participants to achieve long-term goals and to align participant's interests with those of Kemper's. Wood became a participant in the

9

SAR. Section 7 of the SAR contained a forfeiture provision in the event a participant violates or breaches any provisions in Kemper's Confidentiality and Non-Compete Agreement.

**ANSWER**:    Defendant admits that Wood became a participant in the SAR and that Section 7 of the SAR contained a forfeiture provision in the event a participant violates or breaches any provisions in Kemper's Confidentiality and Non-Compete Agreement. Defendant denies the remaining allegations in paragraph 21. of Plaintiff's Amended Complaint.

**Wood and Klingbail Attempt to Hide Their
Violations Through Flow Valve and Kerr Pump**

22.    Tucker, Wood's son-in-law, was a lower level planner and was paid hourly at Kemper's Sulphur facility. Tucker did not participate in the ICP or SAR nor was he required to sign a Confidentiality and Non-Compete Agreement during his employment.

**ANSWER**:    Defendant admits allegations in paragraph 22. of Plaintiff's Amended Complaint.

23.    Within days after Wood abruptly resigned, Tucker resigned. He immediately opened up Flow Valve and was a manufacturer's representative for several of Kemper's competitors.

**ANSWER**:    Defendant admits the allegations in paragraph 23. of Plaintiff's Amended Complaint.

24.    Flow Valve initially operated out of a warehouse located at 2410 W. Broadway in Sulphur, Oklahoma, a property owned by Wood.

**ANSWER**:    Defendant admits the allegations in paragraph 24. of Plaintiff's Amended Complaint.

25.    In or around August 2007, shortly after Klingbail resigned, on information and belief, Flow Valve moved its operations to the corporate headquarters of Kerr Pump located at 2214 W. 14th Street in Sulphur, Oklahoma.  Both Flow Valve and Kerr Pump appear to operate together within a single dwelling, with both of their corporate flags displayed prominently outside the building.

**ANSWER**:    Defendant admits that Flow Valve is located at the same building as Kerr Pump in Sulphur, Oklahoma.  Defendant denies the other allegations in paragraph 25. of Plaintiff's Amended Complaint.

26.    On information and belief, Kerr Pump has either already purchased or has agreed to purchase a portion of Flow Valve.  Wood is the manager-in-fact of Flow Valve's operations despite what any corporate records may state.

**ANSWER**:    Defendant denies the allegations in paragraph 26. of Plaintiff's Amended Complaint.

27.    On information and belief, Wood, in an attempt to hide his conduct in violation of his obligations under the Confidentiality and Non-Compete Agreement, assisted Tucker in all material respects in setting up Flow Valve, in affiliating Flow Valve with Kerr Pump and by disclosing, threatening to disclose or inevitably disclosing the Confidential Information he acquired at Kemper in setting up Flow Valve to compete with Kemper.

**ANSWER**:    Defendant denies the allegations in paragraph 27. of Plaintiff's Amended Complaint.

28.    On information and belief, Wood has represented Flow Valve on sales calls for products and services that compete with Kemper.

11

**ANSWER**:    Defendant admits that he has accompanied his son-in-law on sales calls for products and services that compete with Plaintiff. Defendant denies that he has been a representative of Flow Valve on such sales calls.

29.    On information and belief, Wood has represented Flow Valve at meetings with customers to which Kemper provides products and services.

**ANSWER**:    Defendant admits that he has accompanied his son-in-law at meetings with customers to which Plaintiff provides products and services. Defendant denies that he has been a representative of Flow Valve at such meetings.

30.    On information and belief, Wood, acting through Flow Valve, has diverted business opportunities from Kemper to Flow Valve.

**ANSWER**:    Defendant denies the allegations in paragraph 30. of Plaintiff's Amended Complaint.

31.    On information and belief, Wood has represented Flow Valve in the sales of valves distributed by Flow Valve.

**ANSWER**:    Defendant denies the allegations in paragraph 31. of Plaintiff's Amended Complaint.

32.    On information and belief, Wood has used information acquired during his employment with Kemper to help one of Kemper's competitors build and market manifold trailers using Kemper's design and Confidential Information that would compete with Kemper's product.

**ANSWER**:    Defendant admits that he helped an entity market manifold trailers but denies the other allegations in paragraph 32. of Plaintiff's Amended Complaint.

12

33.     On information and belief, Klingbail will inevitably disclose the trade secrets he acquired as Kemper's Engineering Manager in his position with Flow Valve and/or Kerr Pump.

**ANSWER**:     Defendant denies the allegations in paragraph 33. of Plaintiff's Amended Complaint.

34.     Because Defendants Wood and Klingbail have attempted purposefully to hide their violations of the non-compete and other provisions in their Agreements through Flow Valve, Kemper cannot specify the precise relationship between Flow Valve and Kerr Pump.  On information and belief, Kerr Pump is providing support and resources to Flow Valve, and may even own a portion of Flow Valve as evidenced by the fact that Flow Valve moved into Kerr Pump's corporate headquarters in and around August 2007.  Both Wood and Klingbail are present at the Flow Valve/Kerr Pump facility during regular business hours on virtually a daily basis and are connected with and are assisting Flow Valve's operations, directly or indirectly, in violation of the Wood and Klingbail Agreements.

**ANSWER**:     Defendant admits that Klingbail is present at the Flow Valve facility during regular business hours on virtually a daily basis and is connected with and is assisting Flow Valve's operations.  Defendant admits that he is often present at the Flow Valve facility during regular business hours.  Defendant denies the remaining allegations in paragraph 34. of Plaintiff's Amended Complaint.

35.     On information and belief, Ed Nowell and Mark Nowell, Kerr Pumps owners, are authorized signatories along with Klingbail, on Flow Valve's checking account at First National Bank & Trust in Sulphur, Oklahoma.

**ANSWER**:     Defendant admits the allegations in paragraph 35.of Plaintiff's Amended Complaint.

13

36.    On information and belief, Both Wood and Klingbail now work directly or indirectly for Flow Valve. This is a clear violation of the covenants not to compete in the Wood and Klingbail Agreements.

**ANSWER**:    Defendant admits that Klingbail is now working for Flow Valve. Defendant denies the remaining allegations in paragraph 36. of Plaintiff's Amended Complaint.

37.    Wood further breached his contract by soliciting Klingbail to leave Kemper to work for Flow Valve and/or Kerr Pump.

**ANSWER**:    Defendant denies the allegations in paragraph 37. of Plaintiff's Amended Complaint.

38.    On information and belief, both Wood and Klingbail have solicited indirectly other employees of Kemper to leave Kemper to work for Flow Valve and/or Kerr Pump. Such solicitation also violates the Wood and Klingbail Agreements.

**ANSWER**:    Defendant denies the allegations in paragraph 38. of Plaintiff's Amended Complaint.

39.    On information and belief, Wood and Klingbail have solicited Kemper's customers in flagrant disregard of their contractual agreements.

**ANSWER**:    Defendant denies the allegations in paragraph 39. of Plaintiff's Amended Complaint.

40.    On information and belief, Wood and Klingbail used their knowledge of Kemper's proprietary, trade secret information unfairly to compete with Kemper on behalf of Defendant Flow Valve.

**ANSWER**:    Defendant denies the allegations in paragraph 40. of Plaintiff's Amended Complaint.

14

## COUNT I

## WRONGFUL MISAPPROPRIATION OF TRADE SECRETS
## BY ALL DEFENDANTS

41.     Kemper repeats and realleges each of the allegations contained in Paragraphs 1 through 40 as if fully set forth herein.

**ANSWER**:    Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 40. of Plaintiff's Amended Complaint.

42.     Pursuant to Wood's and Klingbail's Agreements, Kemper provided Wood and Klingbail with confidential and proprietary information, including but not limited to trade secrets and customer lists ("Confidential Information") belonging to Kemper.

**ANSWER**:    Defendant admits that he and Klingbail had access to Plaintiff's information but they had such access before the Non-Compete Agreements had been signed. Defendant denies the other allegations in paragraph 42. of Plaintiff's Amended Complaint.

43.     Defendants knowingly violated the Wood and Klingbail Agreements by using the Confidential Information for their own benefit and for the benefit of Flow Valve and/or Kerr Pump, a competing entity.   Such use of this information constitutes misappropriation of trade secrets in violation of the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1 *et seq.*

**ANSWER**:    Defendant denies the allegations in paragraph 43. of Plaintiff's Amended Complaint.

44.     Wood and Klingbail's positions with Flow Valve and/or Kerr Pump create a high degree of probability of inevitable and immediate use of trade secrets.

**ANSWER**:    Defendant denies the allegations in paragraph 44. of Plaintiff's Amended Complaint.

15

45.    Kemper's Confidential Information is not generally known outside of Kemper's business.

**ANSWER**:    Defendant denies the allegations in paragraph 45. of Plaintiff's Amended Complaint.

46.    Kemper's Confidential Information has economic value, actual and potential, from not being generally known to its competitors and outside persons.

**ANSWER**:    Defendant denies the allegations in paragraph 46. of Plaintiff's Amended Complaint.

47.    Kemper maintains measures to guard the secrecy of its Confidential Information.

**ANSWER**:    Defendant denies that the information Plaintiff contends is Confidential Information is confidential or trade secrets.  Defendant admits that Plaintiff takes measures to guard some of its information.  Otherwise, the allegations in paragraph 47. of Plaintiff's Amended Complaint are denied.

48.    Kemper has expended significant amounts of money to develop unique products, such as its manifold trailer, its bending device and its Flow Control line and related engineering drawings, about which Defendants are aware.

**ANSWER**:    Defendant admits that Kemper has expended significant amounts of money to build and sell products but denies the other allegations in paragraph 48. of Plaintiff's Amended Complaint.

49.    Kemper's manifold trailer and its unique Flow Control line and engineering drawings could not be easily duplicated by others without knowing Kemper's Confidential Information.  Kemper's proprietary data and technical information is missing for its unique bending device for which Klingbail had custody and control.

16

**ANSWER**:    Defendant is without sufficient knowledge to admit or deny that Kemper's proprietary data and technical information for its bending device is missing.  Defendant denies the remaining allegations in paragraph 49. of Plaintiff's Amended Complaint.

50.    As a result of the wrongful actions of Defendants, Kemper has suffered damages, the precise amount of which cannot be determined at this time.

**ANSWER**:    Defendant denies the allegations in paragraph 50. of Plaintiff's Amended Complaint.

51.    The Defendants' willful and malicious misappropriation of Kemper's trade secrets entitle it to damages, including punitive damages, pursuant to the Illinois Trade Secrets Act in amounts yet to be determined.

**ANSWER**:    Defendant denies the allegations in paragraph 51. of Plaintiff's Amended Complaint.

**WHEREFORE**, Defendant prays for dismissal of Count I in all respects, with an award of his attorney's fees and costs.

**COUNT II**

**BREACH OF COVENANT NOT TO COMPETE BY KLINGBAIL**

52.    Kemper repeats and realleges each of the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

**ANSWER**:    Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 51. of Plaintiff's Amended Complaint.

53.    Klingbail was a Key Executive of Kemper and in consideration for continued employment and special incentive compensation benefits entered into a written Confidentiality and Non-Compete Agreement, which includes a non-competition covenant.

**ANSWER**:    Defendant admits that Klingbail signed a document entitled Kemper Valve & Fittings Corp. Confidentiality and Non-Complete Agreement. Defendant denies the remaining allegations in paragraph 53. of Plaintiff's Amended Complaint.

54.    Klingbail's Agreement, which contains certain activity restrictions including the covenant not to compete, is reasonable, valid, and binding.

**ANSWER**:    Defendant denies the allegations in paragraph 54. of Plaintiff's Amended Complaint.

55.    In violation of the covenant not to compete, Klingbail has been directly and indirectly participating in, engaging in, or otherwise has been connected with Flow Valve, both during his employment with Kemper and thereafter and upon information and belief, did compete (and continues to compete) with Kemper at a minimum, assisting Flow Valve and/or Kerr Pump in the design of products and services that compete with Kemper.

**ANSWER**:    Defendant admits that Klingbail assists Flow Valve in competing with Plaintiff. Defendant denies the other allegations in paragraph 55. of Plaintiff's Amended Complaint.

56.    In particular, on information and belief, Klingbail, through Flow Valve, has persuaded or attempted to persuade Kemper's customers to cease doing business with Kemper, or to reduce the amount of business such customers did with Kemper and move their business to Flow Valve, in violation of the Agreement and covenant not to compete.

**ANSWER**:    Defendant denies the allegations in paragraph 56. of Plaintiff's Amended Complaint.

57.    In violation of the activity restriction embodied in the covenant not to compete, Klingbail now serves in some business capacity to Flow Valve by reason of his being, at a

minimum, an authorized signatory on Flow Valve's bank account. Thus, Klingbail owns, manages, operates, controls, is employed by or participates in the ownership, management, operation or control of, or is connected with a business which provides the product or services provided by Kemper and is competitive with Kemper.

**ANSWER**:    Defendant denies that Klingbail is in violation of any enforceable activity restriction embodied in the covenant not to compete. Defendant admits the remaining allegations in paragraph 57. of Plaintiff's Amended Complaint.

58.    Also in violation of the covenant not to compete: A) Klingbail, by and through Flow Valve, has solicited Kemper's customers; B) Klingbail, through Kerr Pump, has solicited and has enticed employees to leave Kemper to work for Flow Valve and/or Kerr Pump; C) Klingbail misappropriated Kemper's trade secrets and threatens to inevitably disclose Kemper's trade secrets by reason of his position; and D) Klingbail has used Kemper's trade secrets individually and/or by and through Flow Valve and/or Kerr Pump.

**ANSWER**:    Defendant denies the allegations in paragraph 58. of Plaintiff's Amended Complaint.

59.    On information and belief, Klingbail's duties with Flow Valve and/or Kerr Pump are substantially the same as those duties he had when employed by Kemper. Therefore, Klingbail can easily and inevitably utilize his knowledge of Kemper's Confidential Information in his performance at Flow Valve and/or Kerr Pump, to the benefit of himself and Flow Valve and/or Kerr Pump and to the detriment of Kemper.

**ANSWER**:    Defendant admits that Klingbail's job with Flow Valve is similar to his job with Plaintiff. Defendant denies that Klingbail is utilizing confidential information in his work at Flow Valve.

19

60.    As a result of Klingbail's violations of his covenant not to compete, Kemper has suffered substantial damages in an amount yet to be determined but believed to be over $75,000.

**ANSWER:**    Defendant denies the allegations in paragraph 60. of Plaintiff's Amended Complaint.

**WHEREFORE,** Defendant prays for dismissal of Count II in all respects, with an award of his attorney's fees and costs.

**COUNT III**

**BREACH OF COVENANT NOT TO COMPETE BY WOOD**

61.    Kemper repeats and realleges each of the allegations contained in Paragraphs 1 through 60 as if fully set forth herein.

**ANSWER:**    Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 60. of Plaintiff's Amended Complaint

62.    Wood was a Key Executive of Kemper and in consideration for continued employment and special incentive compensation benefits entered into a written Confidentiality and Non-Compete Agreement, which includes a non-competition covenant.

**ANSWER:**    Defendant admits that Wood signed a document entitled Kemper Valve & Fittings Corp. Confidentiality and Non-Complete Agreement.  Defendant denies the remaining allegations in paragraph 62. of Plaintiff's Amended Complaint.

63.    Wood's Agreement, which contains certain activity restrictions, including the covenant not to compete, is reasonable, valid, and binding.

**ANSWER:**    Defendant denies the allegations in paragraph 63. of Plaintiff's Amended Complaint.

20

64.    In violation of the covenant not to compete, Wood has been directly and indirectly participating in, engaging in, or has otherwise has been connected with Flow Valve, and upon information and belief, did compete (and continues to compete) with Kemper at a minimum, by diverting and attempting to divert Kemper's customers and business opportunities from Kemper to Flow Valve and/or Kerr Pump.

**ANSWER**:    Defendant admits that his daughter and son-in-law are members and employees of Flow Valve, and that he rented a building and loaned money to them, but denies that he violated any contractually enforceable covenant not to compete. Defendant denies the other allegations in paragraph 64. of Plaintiff's Amended Complaint.

65.    In particular, on information and belief, Wood, through Flow Valve, has persuaded or attempted to persuade Kemper's customers to either cease doing business with Kemper, or to reduce the amount of business such customers did with Kemper, such as Halliburton, in violation of the Agreement and covenant not to compete.

**ANSWER**:    Defendant denies the allegations in paragraph 65. of Plaintiff's Amended Complaint.

66.    In violation of the covenant not to compete, Wood now serves in some business capacity to Flow Valve by reason of his representing Flow Valve at business meetings, accompanying Tucker on customer calls and at customer meetings, by providing consulting services to a competitor on how to manufacture manifold trailers, and by attempting to sell products on behalf of Flow Valve.

**ANSWER**:    Defendant admits that he has accompanied his son-in-law on some customer calls and meetings and has attended some business meetings re Flow Valve. Defendant further admits that he assisted a company in selling manifold trailers but he did so only after

Plaintiff would not manufacture the trailers. Defendant denies that his actions were in violation of any contractually enforceable covenant not to compete and Defendant denies all other allegations in paragraph 66. of Plaintiff's Amended Complaint.

67.    Also in violation of the covenant not to compete: A) Wood, by and through Flow Valve, and/or Kerr Pump has solicited Kemper's customers; B) Wood, through Flow Valve and/or Kerr Pump, has solicited and has enticed employees to leave Kemper to work for Flow Valve and/or Kerr Pump; C) Wood misappropriated Kemper's trade secrets and threatens to inevitably disclose Kemper's trade secrets by reason of his position; and D) Wood has used Kemper's trade secrets individually and/or by and through Flow Valve and/or Kerr Pump.

**ANSWER**:    Defendant denies the allegations in paragraph 67. of Plaintiff's Amended Complaint.

68.    Wood's duties with Flow Valve and/or Kerr Pump are substantially the same as the duties he had when employed by Kemper. Therefore, Wood can easily utilize his knowledge of Kemper's Confidential Information in his performance at Flow Valve and/or Kerr Pump, to the benefit of himself and Flow Valve and/or Kerr Pump and to the detriment of Kemper.

**ANSWER**:    Defendant denies the allegations in paragraph 68. of Plaintiff's Amended Complaint.

69.    As a result of Wood's breach of his non-competition provision, Kemper has suffered substantial damages in an amount yet to be determined but believed to be over $75,000.

**ANSWER**:    Defendant denies the allegations in paragraph 69. of Plaintiff's Amended Complaint.

**WHEREFORE**, Defendant prays for dismissal of Count III in all respects, with an award of his attorney's fees and costs.

22

## COUNT IV

## TORTIOUS INTERFERENCE WITH BUSINESS
## RELATIONS BY DEFENDANTS WOOD AND FLOW VALVE

70.     Kemper repeats and realleges Paragraphs 1 through 69 as though set forth herein.

**ANSWER:**     Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 69. of Plaintiff's Amended Complaint.

71.     Defendants Wood and Flow Valve were aware of Klingbail's Agreement at the time that Wood and Flow Valve induced Klingbail to leave Kemper and work for Flow Valve, and steal Kemper's Confidential Information.

**ANSWER:**     Defendant admits he has been aware of Klingbail's signing the Non-Compete Agreement roughly since the time it was signed but denies the other allegations in paragraph 71. of Plaintiff's Amended Complaint.

72.     Nonetheless, as Kemper's competitor and despite this knowledge, Defendants Wood and Flow Valve intentionally and unjustifiably induced Klingbail to breach the Klingbail Agreement.

**ANSWER:**     Defendant denies the allegations in paragraph 72. of Plaintiff's Amended Complaint.

73.     Furthermore, Flow Valve and Wood were aware that Klingbail was engaged in a business relationship with Kemper as its employee.

**ANSWER:**     Defendant admits the allegations in paragraph 73. of Plaintiff's Amended Complaint.

23

74.     Nonetheless, Flow Valve and Wood sought to interfere with the business relationship between Klingbail and Kemper by inducing him to seek employment with Flow Valve, and steal Kemper's Confidential Information.

**ANSWER**:     Defendant denies the allegations in paragraph 74. of Plaintiff's Amended Complaint.

75.     Defendants were aware of the Wood and Klingbail Agreements, at the time that Defendants indirectly solicited at least one other employee to leave Kemper and work for Flow Valve and/or Kerr Pump; steal Kemper's Confidential Information; and steal Kemper's customers.

**ANSWER**:     Defendant denies the allegations in paragraph 75. of Plaintiff's Amended Complaint.

76.     As a result of Flow Valve's and Wood's inducement, Klingbail terminated his employment with Kemper, and took a job with Flow Valve and/or Kerr Pump in violation of the Klingbail Agreement.

**ANSWER**:     Defendant denies the allegations in paragraph 76. of Plaintiff's Amended Complaint.

77.     Defendants have intentionally and unjustifiably attempted, through Flow Valve and/or Kerr Pump, to induce others to leave Kemper to work for Flow Valve and/or Kerr Pump as well, even though Defendants were aware that these others were engaged in a business relationship with Kemper as its employees.

**ANSWER**:     Defendant denies the allegations in paragraph 77. of Plaintiff's Amended Complaint.

24

78.     Moreover, Defendants sought to interfere with the business relationship between these others and Kemper by soliciting them to seek employment with Flow Valve and/or Kerr Pump, and steal Kemper's Confidential Information;

**ANSWER:**     Defendant denies the allegations in paragraph 78. of Plaintiff's Amended Complaint.

79.     As a result of Defendants' inducement, at least one key Kemper employee has terminated his employment with Kemper, and taken a job with Flow Valve and/or Kerr Pump.

**ANSWER:**     Defendant denies the allegations in paragraph 79. of Plaintiff's Amended Complaint.

80.     As a result of Defendants' actions, Kemper has suffered and will continue to suffer substantial loss and damages, which amount cannot be determined at this time.

**ANSWER:**     Defendant denies the allegations in paragraph 80. of Plaintiff's Amended Complaint.

**WHEREFORE,** Defendant prays for dismissal of Count IV in all respects, with an award of his attorney's fees and costs.

## COUNT V

### TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY BY WOOD AND FLOW VALVE

81.     Kemper repeats and realleges Paragraphs 1 through 80 as though set forth herein.

**ANSWER:**     Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 80. of Plaintiff's Amended Complaint.

25

82.    At least three of Kemper's customers have greatly reduced their business with Kemper since Wood left Kemper and affiliated with Flow Valve, breached the Wood Agreement, and misappropriated Kemper's Confidential Information.

**ANSWER**:    Defendant is without sufficient knowledge to admit or deny that at least three of Kemper's customers have greatly reduced their business with Kemper since Wood left Kemper. Defendant denies the remaining allegations in paragraph 82. of Plaintiff's Amended Complaint.

83.    Based on a past history with these customers, Kemper had a valid business expectancy that its work with the customers would continue and grow.

**ANSWER**:    Defendant denies the allegations in paragraph 83. of Plaintiff's Amended Complaint.

84.    Wood was aware of Kemper's business expectancy because Wood personally worked with these three particular customers when he was employed by Kemper.

**ANSWER**:    Defendant admits that he worked with Plaintiff's customers while he was employed by Plaintiff but denies that Plaintiff had any reasonable business expectancy based on Plaintiff's handling of such customers.

85.    Wood intentionally and unjustifiably interfered with Kemper's business expectancy preventing the realization of the business expectancy to Kemper.

**ANSWER**:    Defendant denies the allegations in paragraph 85. of Plaintiff's Amended Complaint.

86.    As a result of Defendants' actions, Kemper has suffered and will continue to suffer substantial loss and damages. As Defendants have knowledge and possession of Kemper's

Confidential Information, it has an unfair competitive advantage to interfere with Kemper's opportunities to acquire new customers and/or new contacts with Kemper's existing customers.

**ANSWER:**    Defendant denies the allegations in paragraph 86. of Plaintiff's Amended Complaint.

**WHEREFORE,** Defendant prays for dismissal of Count V in all respects, with an award of his attorney's fees and costs.

**COUNT VI**

**BREACH OF THE DUTY OF LOYALTY BY KLINGBAIL**

87.    Kemper repeats and realleges Paragraphs 1 through 86 as though set forth herein.

**ANSWER:**    Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 86. of Plaintiff's Amended Complaint.

88.    Klingbail was an Engineering Manager for Kemper with significant managerial responsibilities for the operation of Kemper's Engineering Department.

**ANSWER:**    Defendant admits the allegations in paragraph 88. of Plaintiff's Amended Complaint.

89.    As an Engineering Manager for Kemper, Klingbail acknowledged his position of loyalty in the Klingbail Agreement and owed a duty of loyalty to Kemper to not actively exploit his position within the corporation for his own personal benefit or to hinder the ability of Kemper to continue the business, or a subset thereof, for which it was developed.

**ANSWER:**    Defendant admits that as an employee Klingbail owed the duty of loyalty the law applies to all employees while they are employed by an employer that is acting in good faith toward the employee.   To the extent that the allegations in paragraph 89. of Plaintiff's Amended Complaint are meant to expand such duty, the allegations are denied.

90.    On information and belief, Klingbail breached this duty and position of loyalty before tendering his resignation by providing guidance to Flow Valve while he worked for Kemper, and by misappropriating Kemper's Confidential Information for use by Flow Valve and/or Kerr Pump.

**ANSWER:**    Defendant denies the allegations in paragraph 90. of Plaintiff's Amended Complaint.

91.    Klingbail breached this position and duty of loyalty after his resignation by actively exploiting his position with Kemper to his own benefit by using the information acquired while he was an employee for the benefit of Flow Valve and/or Kerr Pump.

**ANSWER:**    Defendant denies the allegations in paragraph 91. of Plaintiff's Amended Complaint.

92.    As a result of Klingbail's breach of loyalty, Kemper has suffered and continues to suffer substantial damages, the amount of which cannot be determined at this time.

**ANSWER:**    Defendant denies the allegations in paragraph 92. of Plaintiff's Amended Complaint.

**WHEREFORE,** Defendant prays for dismissal of Count VI in all respects, with an award of his attorney's fees and costs.

## COUNT VII

## <u>BREACH OF THE DUTY OF LOYALTY BY WOOD</u>

93.    Kemper repeats and realleges Paragraphs 1 through 92 as though set forth herein.

**ANSWER:**    Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 92. of Plaintiff's Amended Complaint.

28

94.     Wood was the General Manager for Kemper's Sulphur facility and the National Sales Manager for Kemper's Flow Control line.

**ANSWER:**     Defendant admits the allegations in paragraph 94. of Plaintiff's Amended Complaint.

95.     As an employee and agent of Kemper, Wood occupied a position of loyalty as acknowledged in the Wood Agreement and owed a duty of loyalty to Kemper to not compete with Kemper or a subset thereof in contraction of the Wood Agreement. Wood also owed a duty of loyalty to Kemper to not actively exploit his position within the corporation for his own personal benefit or to hinder the ability of Kemper to continue the business, or a subset thereof, for which it was developed.

**ANSWER:**     Defendant admits that as an employee he owed the duty of loyalty the law applies to all employees while they are employed by an employer that is acting in good faith toward the employee. To the extent that the allegations in paragraph 95. of Plaintiff's Amended Complaint are meant to expand such duty, the allegations are denied.

96.     Wood breached this position and duty of loyalty before tendering his resignation by assisting Tucker, his son-in-law, with opening a competing business, by diverting Kemper's business and customers to Flow Valve, and by soliciting at least one Kemper employee to leave Kemper and join Flow Valve and/or Kerr Pump.

**ANSWER:**     Defendant denies the allegations in paragraph 96. of Plaintiff's Amended Complaint.

97.     Wood breached this position and duty of loyalty after his resignation by actively exploiting his position with Kemper for his own benefit by using the information acquired while he was an employee for the benefit of Flow Valve and/or Kerr Pump.

**ANSWER**:    Defendant denies the allegations in paragraph 97. of Plaintiff's Amended Complaint.

98.    As a result of Wood's breach of loyalty, Kemper has suffered and continues to suffer substantial damages, the amount of which cannot be determined at this time.

**ANSWER**:    Defendant denies the allegations in paragraph 98. of Plaintiff's Amended Complaint.

**WHEREFORE**, Defendant prays for dismissal of Count VII in all respects, with an award of his attorney's fees and costs.

**COUNT VIII**

**CIVIL CONSPIRACY BY ALL DEFENDANTS**

99.    Kemper repeats and realleges Paragraphs 1 through 98 as though set forth herein.

**ANSWER**:    Defendant hereby incorporates by reference, as if fully set forth herein, its responses herein to paragraphs 1. through 98. of Plaintiff's Amended Complaint.

100.    On information and belief, Wood and Klingbail are direct or indirect employees of Flow Valve and/or Kerr Pump, and are former employees and Key Executives of Kemper.

**ANSWER**:    Defendant admits that Klingbail is an employee of Flow Valve and he and Klingbail are former employees of Kemper.  Defendant denies the remaining allegations in paragraph 100. of Plaintiff's Amended Complaint.

101.    On information and belief, while employed by Kemper, Wood and Klingbail agreed to create a manufacturer's representative agency that would compete with Kemper, solicit and divert Kemper's customers, hire Kemper employees, and use Kemper's trade secrets and Confidential Information to compete unfairly with Kemper and to steal Kemper's trade secrets and business opportunities.

30

**ANSWER**:    Defendant denies the allegations in paragraph 101. of Plaintiff's Amended Complaint.

102.    In furtherance of this Agreement, Wood directed his son-in-law to incorporate Flow Valve and Wood arranged for Flow Valve to become affiliated with Kerr Pump, Wood provided the initial space from which Flow Valve could operate and Wood prepared the business to be ready to begin operations. On information and belief, Wood and Klingbail, along with Kerr Pump, have provided economic and business operations support to Flow Valve.

**ANSWER**:    Defendant admits that he has provided a loan to Flow Valve and rented a building to Flow Valve. Defendant denies the other allegations in paragraph 102. of Plaintiff's Amended Complaint.

103.    Kemper has been injured because of these overt acts performed by Wood and Klingbail, the amount of which will be determined at a later time.

**ANSWER**:    Defendant denies the allegations in paragraph 103. of Plaintiff's Amended Complaint.

104.    Wood and Klingbail acted in concert and the overt acts were done in furtherance of and pursuant to the common scheme of trade secret misappropriation, tortious interference with business expectancy, seizure of business opportunity, tortious interference with Kemper's business relationships, and breach of Wood's and Klingbail's positions and duties of loyalty to Kemper.

**ANSWER**:    Defendant denies the allegations in paragraph 104. of Plaintiff's Amended Complaint.

**FURTHER ANSWER:**    Any allegations made by Plaintiff in its Amended Complaint not admitted herein are expressly denied.

31

**WHEREFORE,** Defendant prays for dismissal of Count VIII in all respects, with an award of his attorney's fees and costs.

### Affirmative Defenses

1.      For further answer, Defendant avers that he signed the Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement under duress and therefore it is invalid.

2.      For further answer, Defendant avers that as to him the Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement was a contract of adhesion and therefore it is invalid.

3.      For further answer, Defendant avers there was a lack of consideration for signing the Kemper Valve & Fittings Corp. Confidentiality and Non-Compete Agreement and therefore it is invalid.

4.      For further answer, Defendant avers that the Non-Compete Agreement is unenforceable because the geographic area is not limited to a reasonable area and it is not necessary to protect a legitimate business interest of Plaintiff and its main purpose is to prevent competition.

5.      For further answer, Defendant asserts the defenses of estoppel, waiver and laches in that Plaintiff has allegedly known about Defendants' alleged competition in violation of the Non-Compete Agreement for some time but failed to seek to enforce the terms of the Agreement.

6.      For further answer, in the alternative Defendant avers that Plaintiff breached the Kemper Incentive Compensation Plan by stopping payments owed by Plaintiff to Defendant without a valid legal reason, resulting in the Non-Compete Agreement being unenforceable.

7.      For further answer, in the alternative Defendant asserts that Plaintiff breached the Kemper Valve & Fittings Corp. 2004 Stock Appreciation Plan by notifying Defendant that

Plaintiff would not pay him amounts owed under such plan when such payments would come due, resulting in the Non-Compete Agreement being unenforceable.

### Jury Demand

Defendant demands a trial by jury.

**WHEREFORE PREMISES CONSIDERED**, Defendant prays that Plaintiff take nothing by its lawsuit, that Defendant recovers its costs and attorney's fees expended herein, and for such other and further relief to which Defendant may show itself to be justly entitled.

Dated:  March 3, 2008

Respectfully submitted,

_____
One of the attorneys for defendant,
Buddy Wood

William W. Speed
George W. Braly
Braly, Braly, Speed & Morris
201 W. 14th Street
P.O. Box 2739
Ada, OK 74821-2739
Phone: 580-436-0871
Fax:  580-436-0889

James D. Adducci
Paul E. Lehner
ADDUCCI, DORF, LEHNER, MITCHELL
& BLANKENSHIP, P.C.
150 N. Michigan Avenue, Suite 2130
Chicago, IL  60601
Phone: 312-781-2800

33

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys for Defendant Buddy Wood, certifies that, on March 3, 2008, he caused a copy of Defendant Buddy Wood's Answer to Plaintiff's Amended Complaint to be served by means of ECF to:

Davi Lynn Hirsch                     Daniel R. Madock
Joshua D. Holleb                     Klein, Dub & Holleb, Ltd.
Klein, Dub & Holleb, Ltd.            525 W. Monroe Street, Suite 2360
660 LaSalle Place                    Chicago, IL  60661
Highland Park, IL  60035

/s/ Paul E. Lehner