IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEMPER VALVE & FITTINGS CORP. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   08 C 513 |
| ) | |
| BUDDY WOOD, KENNETH KLINGBAIL, ) | Honorable Judge Guzman |
| FLOW VALVE, LLC, ) | Magistrate Judge Nolan |
| ) | |
| Defendants. ) | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE

Plaintiff Kemper Valve & Fittings Corp., ("Kemper") by and through its undersigned counsel, filed an eight-count Amended Complaint against Defendants Flow Valve LLC, ("Flow Valve") Buddy Wood, and Kenneth Klingbail for (1) misappropriation of trade secrets under the Illinois Trade Secrets Act, 765 ILCS 1065/1, (2) breaches of covenants not to compete, (3) tortious interference with business relations and business expectancy, (4) civil conspiracy and (5) breaches of duty of loyalty. Defendant Flow Valve filed a Motion to Dismiss, asserting that it is not subject to personal jurisdiction in Illinois or alternatively, that the Eastern District of Oklahoma provides a more convenient forum for this action. As demonstrated below, however, because Kemper's claims in this case arise out of contracts governed by Illinois law, the injury Kemper suffers from Flow Valve's trade secret misappropriation is felt most severely in Illinois and Flow Valve's tortious conduct caused injury to Kemper in Illinois, both jurisdiction and

venue are appropriate in this judicial district. Accordingly, Flow Valve's Motion[1] should be denied in its entirety.

I. **Statement Of Pertinent Facts**

Kemper is an Illinois corporation with its principal place of business in Island Lake, Illinois. Compl., ¶7. Kemper manufactures and markets oilfield flow control products. *Id.* at ¶13. Kemper has two branch facilities in Sulphur, Oklahoma. *Id.*

Defendant Klingbail joined Kemper's Illinois corporate headquarters staff in 1999 as an Engineer. *Id.* at 14. Klingbail subsequently became Kemper's Engineering Manager. *Id.* While an Illinois employee and as Kemper's Engineering Manager, Klingbail had access to Kemper's engineering designs, information about the unique products Kemper was developing, formulas, drawings, and proprietary new product concepts and business information. *Id.* Defendant Wood also joined Kemper in 1999. *Id.* at ¶15. Wood initially was Kemper's General Manager for its Sulphur, Oklahoma facilities. *Id.* Wood subsequently became Kemper's National Sales Manager for Kemper's Flow Control line of products.

In 2001, both Klingbail and Wood acknowledged they were key executives of Kemper and they executed Confidentiality and Non-Compete Agreements as consideration for continued employment and the opportunity to participate in Kemper's Incentive Compensation Plan. *Id.* at ¶¶16, 18, 19. The Confidentiality and Non-Compete Agreements executed by Wood, Klingbail and Kemper state that the agreements "shall be regarded for all purposes as an Illinois document and the validity and construction hereof, and all costs and payments required hereunder shall be determined and governed, in all aspects, by the laws of the state of Illinois." *Id.* at Exh. A, ¶9; Exh. B, ¶9.

---

[1] Flow Valve's Motion to Dismiss Plaintiff's Amended Complaint or, in the Alternative to Transfer Venue hereinafter is referred to as "Flow Valve Mot.". Flow Valve's Memorandum in Support of Motion to Dismiss hereinafter is referred to as "Flow Valve Mem."

On January 31, 2007, Wood suddenly resigned voluntarily from his position at Kemper. Compl., ¶2. Thereafter, Flow Valve was organized and began operations in February 2007. Flow Valve Mem. at pp. 4,10; Flow Valve Mot., Decl. of Mark Nowell, ¶3. Flow Valve's products and services compete with Kemper's. Answer, ¶28. Klingbail suddenly resigned from Kemper in July 2007. Compl., ¶2. Klingbail has been a member and employee of Flow Valve since September 2007. Flow Valve Mem. at p. 7. Klingbail assists Flow Valve in competing with Kemper. Answer, ¶55. Klingbail's job with Flow Valve is similar to his job with Kemper. *Id.* at ¶59.

Count I of the Amended Complaint asserts a claim against Flow Valve, Klingbail and Wood for misappropriation of trade secrets in violation of the Illinois Trade Secrets Act. Wood and Klingbail admit they had access to Kemper's confidential and proprietary information. Answer, ¶42. Kemper alleges Wood and Klingbail have used for their own and Flow Valve's benefit Kemper's confidential information and thus all three defendants have misappropriated Kemper's trade secrets. *Id.* at ¶43. Kemper's trade secret information is the subject matter of this litigation.

Counts IV and V of the Amended Complaint assert claims for tortious interference with business relations and tortious interference with business expectancy by Wood and Flow Valve, respectively. Flow Valve and Wood's purposeful tortious conduct, directed at an Illinois resident, has caused injury within the state.

## II.  This Court Has Personal Jurisdiction Over Flow Valve As A Matter of Law

### A.  Applicable Standard

When, as in this case, personal jurisdiction is being decided solely on the basis of affidavits and other documentary evidence, the party asserting jurisdiction – here Kemper - bears minimal burden. Indeed, "[t]his burden . . . is low." *Wasendorf v. DBH Brokerhaus AG*, No.

3

04C 1904, 2004 WL 2872763, at *2 (N.D. Ill. Dec. 13, 2003). A plaintiff need only make a *prima facie* showing of personal jurisdiction, and the court must consider all evidence in a light most favorable to the plaintiff. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). In evaluating personal jurisdiction, all well-pleaded facts are accepted as true, and all factual disputes are resolved in favor of the party asserting jurisdiction. *Competitive Strategies Grp., Ltd. v. IP Comm. Corp.* No. 00 CV 0057, 2000 WL 28679, at *1 (N.D. Ill. Mar. 13, 2000).

Because this is a diversity action, this Court will have personal jurisdiction over Defendants if an Illinois state court would have such jurisdiction. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). In making this assessment, the Court must determine (i) whether Illinois' long-arm statute provides for the assertion of jurisdiction over defendants; and (ii) if so, whether the assertion of jurisdiction would violate constitutional due process requirements. *See RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). The Illinois long-arm statute contains a "catch-all" provision that allows Illinois courts to assert personal jurisdiction to the maximum extent permitted by the Illinois and United States Constitutions. *See* 735 ILCS 5/2-209(c). Based on this provision, federal courts have found that personal jurisdiction under Illinois law exists if federal due process requirements have been met. *RAR,* 107 F.3d at 1276. Thus, if a plaintiff can show that asserting jurisdiction over a defendant in Illinois would comport with federal due process, then it need not show that the defendant committed any of the enumerated statutory acts of the Illinois long-arm statute. Here, Plaintiff easily makes such a showing.

To assert personal jurisdiction consistent with federal due process requirements, a defendant must have (1) certain minimum contacts with the forum state such that (2) maintenance of the suit does not "offend traditional notions of fair play and substantial justice."

4

*RAR*, 107 F.3d at 1277 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In order to have specific jurisdiction (as alleged here)[2] based on these standards, a plaintiff's claim must "arise out of" or "relate to" the defendant's minimum contacts with the forum state. *See Hyatt*, 302 F.3d at 713. Thus, a non-resident defendant can be haled into an Illinois court where the defendant purposefully established minimum contacts within the forum state and those contacts make personal jurisdiction fair and reasonable under the circumstances. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *RAR*, 107 F.3d at 1277.

### B. This Court Has Specific Jurisdiction Over Flow Valve[3]

#### 1. Flow Valve Purposefully Established Minimum Contacts With Illinois

By committing a tort that directly injured a corporation with its principal place of business in Illinois, Flow Valve subjected itself to the personal jurisdiction of this Court. The Illinois Long-Arm Statute provides that if a person commits a tort within Illinois, and the injury to the plaintiff arises out of those activities, the court has personal jurisdiction over the defendant. *See* 735 ILCS 5/2-209(a)(2). Under the "effects doctrine," a court may exercise personal jurisdiction over a defendant who commits a tort against an Illinois business when the injury is felt in Illinois." *International Molding Mach. Co. v. St. Louis,* No. 01 C 8305, 2002 WL 1838130, at *4 (N.D. Ill. Aug. 12, 2002). *See also Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202-03 (7th Cir. 1997) (if injury takes place in Illinois, tort is achievable in Illinois). Therefore, exercising specific jurisdiction is proper when the injury occurs in Illinois, even if all of the other relevant conduct took place elsewhere. *See Celozzi v. Boot,* No. 00 C 3285, 2000 WL 1141568, at *3 (N.D. Ill. Aug. 11, 2000) (holding that court had personal jurisdiction even though the defendant's actions took place outside Illinois because injury was felt in Illinois).

---

[2]  Kemper has not yet been able to conduct discovery to determine the full extent of Flow Valve contacts with Illinois to establish general jurisdiction but reserves the right to do so.
[3]  Both Wood and Klingbail admit this court has personal jurisdiction over them. Answer, ¶11.

Flow Valve's Motion and Memorandum entirely ignore any discussion of the "effects doctrine" – a doctrine unquestionably supporting the exercise of personal jurisdiction here. Under that doctrine, courts exercise personal jurisdiction "over a defendant who commits a tort against an Illinois business when the injury is felt in Illinois." *International Molding Mach. Co. v. St. Louis Conveyor Co.,* No. 01 C 8305, 2002 U.S. Dist. LEXIS 14790, at *12-13 (N.D. Ill. Aug. 12, 2002) (*citing cases*). Here, Flow Valve was well aware that Kemper's principal place of business is in Illinois and thus the injury suffered by Kemper as a result of Flow Valve's misappropriation of Kemper's trade secrets "would be felt most severely in Illinois." *See International Molding Mach. Co.,* 2002 U.S. Dist. LEXIS 14790, at *12-13 (concluding that jurisdiction was appropriate in case brought under the Illinois Trade Secrets Act where, even though trade secrets were misappropriated in another state, the plaintiff was an Illinois corporation such that the injury suffered by the plaintiff "occurred in Illinois"). Under such circumstances, it was foreseeable that Flow Valve would be required to answer for such actions in Illinois. *See Riddell v. Monica,* 2003 U.S. Dist. LEXIS 13053, at *9 (N.D. Ill. July 25, 2003).

    **2.    Personal Jurisdiction Over Flow Valve Is Fair And Reasonable**

Personal jurisdiction over Flow Valve is appropriate here for the additional reason that exercising such jurisdiction would not offend traditional notions of fair play and substantial justice. *See Burger King Corp.,* 471 U.S. at 477-78. Relevant factors to this inquiry include: (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) avoidance of multiplicity of suits on conflicting adjudications. *Ashai Metal Indus. Co. v. Superior Ct. of Cal.,* 480 U.S. 102, 115 (1987); *Burger King Corp.,* 471 U.S. at 472. Courts have held that the most significant factors to weigh are the

interests of the forum and the relative convenience of litigating in that forum. *See, e.g., Kohler Co., v. Kohler Int'l Ltd.*, 196 F. Supp. 2d 690, 700 (N.D. Ill. 2002) (motion to dismiss denied).

Illinois maintains a strong interest in adjudicating this case because Kemper has its principal place of business in Illinois and suffered injuries within Illinois' borders. *See Coolsavings.com Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1005 (N.D. Ill. 1999)(finding that Illinois has an interest in regulating activities that involve its corporate residents and their intellectual property rights). The Court in *International Molding Mach. Co.*, 2002 U.S. Dist. LEXIS 14790, at *12-13 similarly recognized that out of state defendants are subject to personal jurisdiction in this district where, as here, the defendant is accused of misappropriation of trade secrets under the Illinois Trade Secrets Act. *Id. See also Experian Information Solutions, Inc. v. I-Centrix*, 2004 U.S.Dist. LEXIS 23515, at *12 (N.D. Ill. Nov. 19, 2004 (Illinois has a strong interest in providing a forum for Plaintiffs who bring their claims in part under the Illinois Trade Secret Act)). Also, Kemper, a company with its headquarters located in Illinois, has a substantial interest in obtaining relief in its home state for a breach of contract and breach of duties of loyalty. *Gympsum Co.*, 977 F. Supp. at 1343; *see also International Molding Mach. Co.*, 2002 U.S. Dist. LEXIS 14790, at *12-13 ("This interest [in adjudicating injuries that occur within a state's borders] extends to disputes that arise out of business relations formed between Illinois residents and nonresidents.").

It likewise would not be unduly burdensome for Flow Valve to litigate in Illinois, "given that Chicago is a major metropolitan area and transportation hub." *Riddell*, 2003 U.S. Dist. LEXIS 13053, at *11; *see also Birnberg v. Milk St. Residential Assocs. Ltd.*, 2003 U.S. Dist. LEXIS 806, at *8 (N.D. Ill. Jan. 21, 2003) (travel from Massachusetts to Illinois did not violate due process because of transportation and communication advances).

Finally, although Flow Valve's employees may reside in Oklahoma, other key witnesses work and/or reside in Illinois. For example, the signatory to the Non-Compete and Confidentiality Agreement on Kemper's behalf – Jackson Kemper - works and resides in Illinois. Klingbail also signed his Agreement in Illinois. The members of Kemper's Engineering Department and all of its confidential engineering drawings, specifications, standards and other trade secret documents are located at Kemper's facility in Island Lake, Illinois. Authentication of Kemper's trade secret information will be done through Kemper Illinois employees. Thus, where – as is the case here – the potential witnesses in this case reside in both Illinois and Oklahoma, the matter may be adjudicated in Illinois. *See International Molding Mach. Co.,* 2002 U.S. Dist. LEXIS 14790, at *15-16. ("[T]he record does not show that the location of evidence and witnesses make it unreasonable to efficiently resolve this case in Illinois.") Accordingly, Flow Valve's Motion to Dismiss should be denied.

### III.   Venue Is Proper And Convenient In Illinois

####   A.   Venue Is Proper In This Judicial District

Defendants Klingbail and Wood admit that venue is proper in this district under 28 U.S.C. §1391(a). Answer, ¶12. Venue, likewise, is proper under 28 U.S.C. §1391(c), with respect to Flow Valve because, as demonstrated at pages 3-8 above, Flow Valve is subject to personal jurisdiction in the Northern District of Illinois. Section 1391(c) provides that "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Venue is proper here and the case should not be transferred to Oklahoma.

**B.　　The Eastern District Of Oklahoma Is Not A More Convenient Forum Than The Northern District of Illinois**

This court also should not transfer this case pursuant to 28 U.S.C. §1404(a) because venue is not more convenient in the Eastern District of Oklahoma. A district court may transfer a case to another district where the case otherwise might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a); *see also Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-20 (7th Cir. 1986) (courts consider the convenience of the parties, the convenience of the witnesses, and the interest of justice). Transfer is appropriate under 28 U.S.C. §1404(a) when "(1) venue is proper in the transfer or district; (2) venue and jurisdiction is proper in the transfer district; and (3) the transfer will foster the convenience of the parties and witnesses and will promote the interest of justice." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 959 (N.D. Ill. 2000). Flow Valve, as the movant, bears the burden of proving why this Court should grant a transfer of venue. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-509 (1947). In order to meet this burden, Flow Valve must demonstrate that "the transferee forum is *clearly more convenient*." *Coffey*, 796 F.2d at 219 (emphasis added); *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1164 (N.D. Ill. 1995). Here, Flow Valve has failed entirely to make the requisite showing.

Courts in this district evaluate the private interests of the parties and the public interests of the court in determining whether transfer actually will serve the convenience of the parties. *First National Bank v. El Camino Resources, Ltd.*, 447 F. Supp. 2d 902, 911-12 (N.D. Ill. 2006). As demonstrated below, both the private and public factors weigh against the transfer of this case to Oklahoma.

1. **Kemper Resides In Illinois And Its Choice Of Forum Should Be Given Substantial Deference**

As an initial matter, Kemper's choice of forum is paramount in deciding whether a case should be transferred where, as here, it is the plaintiff's home forum. A plaintiff's forum selection "should rarely be disturbed unless the balance weighs strongly in the defendant's favor." *Vandeveld*, 877 F. Supp. at 1167; *see also Plymouth Tube Co. v. O'Donnell*, 1995 U.S. Dist. LEXUS 8912, at *14 (N.D. Ill. June 28, 1995) (noting that "the plaintiff's choice of forum is given considerable weight"). In fact, even if two forums are equally convenient, the Supreme Court has held that venue should not be transferred because of the strong interest in allowing the plaintiff to choose its forum. *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). Because Kemper is a resident of Illinois, its choice to proceed with a lawsuit in its home state is given great weight, as it has a strong interest in having its claims decided here and its interests are paramount. *Central State, Southeast & Southwest Areas Pension Fund v. Salasnek Fisheries*, 977 F. Supp. 888, 890 (N.D. Ill. 1997) ("[A] party's choice of forum is given substantial deference, particularly if it is also that plaintiff's home forum.").

2. **Illinois Is The Situs Of Important Material Events**

This factor weighs against transfer because many material events occurred in Illinois. *First*, but for Klingbail's longstanding relationship as Kemper's Engineering Manager in Illinois, Flow Valve never would have had access to the trade secret information Klingbail misappropriated for Flow Valve's present use. Kemper's cause of action for violations of the Illinois Trade Secret Act arise directly out of Klingbail's contacts with Illinois and Flow Valve's present use of Kemper's misappropriated trade secrets. As demonstrated at pp. 3-8 above, Illinois courts exercise personal jurisdiction over non-resident Defendants charged with trade secret misappropriation. *See Int'l Molding Machine Co.*, 2002 U.S. Dist. LEXIS 14790, at *12-

13. *Second*, Kemper's principal place of business is in Illinois and Flow Valve directed its conduct toward an Illinois resident. Flow Valve's actions, regardless of where they took place, subsequently harmed an Illinois corporation and subject Flow Valve to personal jurisdiction here. *Id.*

### 3.    The Relative Ease Of Proof Does Not Justify Transfer

Flow Valve concedes documents in this case should be easily transferable. Flow Valve Mem. at p.10. Indeed, in this era of faxing, scanning and overnight delivery services, the location of documentary evidence is largely irrelevant. *Hanley v. Omarc, Inc.*, 6 F.Supp.2d 770, 775 (N.D. Ill. 1998).

### 4.    The Convenience Of The Parties Does Not Favor Flow Valve

Flow Valve asserts that litigating this case in Illinois rather than Oklahoma will be burdensome economically based on the unsubstantiated allegations that Wood and Klingbail have limited resources and Flow Valve is a small new company. Flow Valve Mem. at p. 10. The "convenience of the parties" analysis, however, does not justify a transfer of this case.

The fact that Defendants reside in Oklahoma and will be inconvenienced without transfer does not support transfer, where, as here, the Plaintiff resides in the district where the case was filed. "[I]t is always more burdensome for a party to litigate outside its home forum. But Defendants have offered no reason why the Court should transfer this burden to [Kemper]." *Bofia v. Harris and Stanley Manufacturing Co.*, 04 C 514, 2004 U.S. Dist. LEXIS 13437, at *8-9 (N.D. Ill. July 15, 2004).

Defendants alleged limited resources also do not support the conclusion the balance of conveniences is strongly in favor of Flow Valve. The named individual Defendants and Mark Nowell rarely will be compelled to appear in Illinois unless and until this case goes to trial. Counsel routinely agree to depose witnesses in the districts where they reside. Kemper easily

can depose the Defendants in Oklahoma. Defendants have competent counsel in Illinois who easily can depose any Kemper employees and representatives. If the Defendants choose to attend the depositions personally, or through counsel, they would have the same travel expense irrespective of where the case is pending.

Defendants claimed limited resources also should not be believed by this Court. Both Wood and Klingbail abruptly resigned voluntarily from Kemper. They both had well paying positions at Kemper with generous bonuses, salaries and other compensation. Wood was paid $110,899 in total compensation in 2003, $129,176 in total compensation in 2004, $421,936 in total compensation in 2005, $674,132 in total compensation in 2006 and $63,300 in 2007 despite having worked only one month. Walschot Dec. at ¶8 attached hereto as Exh. 3. Klingbail was paid $99,421 in total compensation in 2003, $103,613 in total compensation in 2004, $113,875 in total compensation in 2005, $169,343 in total compensation in 2006 and $73,312 in 2007. Walschot Dec. at ¶8. Wood has loaned money and rented property to Flow Valve. Answer, ¶64. Klingbail is a member and employee of Flow Valve. Wood and Klingbail Mem. at p.4. Defendants have not demonstrated they cannot afford to litigate in Illinois.

Thus, while Oklahoma undoubtedly would be a convenient forum for Flow Valve, it would be inconvenient for Kemper. Transferring this action to Oklahoma is inappropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Hanley*, 6 F.Supp.2d at 776 (*quotation omitted*). Given that transfer of venue will only shift any inconvenience to Kemper, consideration of the convenience of the parties weighs against transfer.

### 5. The Convenience Of The Witnesses Is A Neutral Factor

While the "convenience of witnesses" is an important factor in examining a motion to transfer, this factor appears to be neutral here. The three witnesses Flow Valve claims it will

need – Wood, Klingbail and Mike Nowell – all are either named parties and/or agents of Flow Valve. These witnesses are within Flow Valve's control and it can be presumed they will appear voluntarily. *First National Bank,* 447 F. Supp. 2d at 913.

Kemper will call as witnesses Jackson Kemper, its President, and Michael Walschot, its Controller, both of whom are located in Illinois. Each will testify about the contracts with Wood and Klingbail, the violation of those contracts through Flow Valve and the injury to Kemper in Illinois. Kemper also will call as witnesses employees in its Engineering Department who will authenticate Kemper's engineering drawings, standards, specifications, product designs, and other trade secret information. These Illinois employees likewise will be important in terms of addressing the trade secret misappropriation and injury issues.

Because there has been no written discovery to date in the case, Flow Valve's claims that it will need testimony from customers and employees on the issue of solicitation violations is pure speculation. Based upon the admissions in Defendants Wood and Klingbail's answers to the Amended Complaint, it is more likely that most, if not all, of the evidence needed can be obtained through written discovery and from the named parties. The convenience of Wood and Klingbail "is clearly not relevant to this analysis, because they are parties." *Bafia,* 2004 U.S. Dist. LEXIS 13437, at *10. Obviously, Illinois is convenient for Kemper and Oklahoma is more convenient to Flow Valve. When the inconvenience of venues are comparable and the Plaintiff resides in the home forum, there is no basis for a change of venue; the tie is awarded to the plaintiff. *In re National Presto Indus., Inc.,* 347 F.3d 662, 665 (7th Cir. 2003).

### C.    This Court Is Most Familiar With The Applicable Illinois Law

Flow Valve makes no showing that is more efficient to administrate this case in the Eastern District of Oklahoma. In fact, the opposite is true. Indeed, Kemper's Amended Complaint, inter alia, seeks relief under the Illinois Trade Secret Act. "It is very likely that an

Illinois federal court, rather than [an Oklahoma] federal court, will be more familiar with an Illinois statute." *International Molding Machine Co.,* 2002 U.S. Dist. LEXIS 14790, at *12. Indeed, Kemper could uncover no recent decision where the Eastern District of Oklahoma has been called upon to interpret or apply, the Illinois Trade Secret Act. Also, "Illinois has a strong interest in adjudicating injuries to the intellectual property rights of its corporate residents." *Id.*

### IV.    Speed To Disposition Is Faster In Illinois

The speed at which this case would proceed in Illinois from filing to disposition weighs in favor of the case remaining here. The Federal Court Management Statistics have not been updated since 2005 for the Eastern District of Oklahoma with respect to the median time from filing to trial. *See* Exh. 1. In the absence of comparable statistical data, the Northern District of Illinois and the Eastern District of Oklahoma cannot be accurately compared with respect to the time from filing to trial. In any event, according to the 2007 United States District Court statistics, the actual percentage of case that proceed to trial in either venue is less than 3%. *See* Exh. 2.

Both districts, however, do have available statistics for 2007 for filing to disposition. In the Northern District of Illinois, the median number of months from filing to disposition in civil cases was 6.2 months while that number was 9.4 months for the Eastern District of Oklahoma. Exh. 1. Thus, the average case is likely to be disposed of three months earlier here. This factor militates against transfer.

### V.    Illinois Has A Strong Community Relationship To This Litigation

"Resolving litigated controversies in their locale is a desirable goal of the Federal Courts." *Jewel America, Inc. v. Combine International Inc.*, No. 07 C 3596, 2007 U.S. Dist. LEXIS 89026, at 10 (N.D. Ill. Nov. 30, 2007). Kemper resides in Illinois, the injury that resulted from Klingbail's and Flow Valve's and potentially Wood's violations of the Illinois Trade Secrets

Act occurred in Illinois, and Wood and Klingbail have agreed that Illinois law is controlling with respect to interpretation of their Confidentiality and Non-Compete Agreements. Illinois certainly has a strong interest in deciding claims involving misappropriation of trade secrets, breach of duty of loyalty and breaches of contract governed by Illinois law. It is in the public interest to have local residents act as jurors for this case affecting interests of an Illinois resident. *See McCants v. C.H. Robinson Worldwide, Inc.*, Nos. 06 C 6556, 06 C 6634, 2007 U.S. Dist. LEXIS 40631, at *8, June 4, 2007).

Thus, weighing all relevant factors in light of the substantial weight to be given Kemper's choice of forum, Flow Valve cannot meet its burden of demonstrating that the transferee venue is clearly more convenient that this judicial district, and thus, transfer of venue is inappropriate in this case.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and its alternative Motion to Transfer Venue should be denied.

Dated: March 21, 2008                                Respectfully submitted,

s/Davi L. Hirsch
One of their Attorneys
DAVI L. HIRSCH (Atty. #06182757)
DANIEL R. MADOCK (Atty. #6192393)
JOSHUA D. HOLLEB (Atty. #6185409)
KLEIN DUB & HOLLEB, LTD.
660 LaSalle Place, Suite 100
Highland Park, IL 60035
Phone: (847) 681-9100
Fax: (847) 681-1600
dhirsch@labor-law.com
drm@labor-law.com
jdh@labor-law.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Plaintiff's Response to Defendant's Motion to Dismiss or Transfer Venue was served upon:

William W. Speed
George W. Braly
Braly, Braly, Speed & Morris, PLLC
201 W. 14th Street
P.O. Box 2739
Ada, OK 74821-2739

James D. Adducci
Paul E. Lehner
Adducci, Dorf, Lehner, Mitchell & Blankenship, P.C.
150 N. Michigan Avenue, Suite 2130
Chicago, IL 60601

via regular U. S. Mail, postage prepaid, this 21st day of March, 2008.

s/Davi L. Hirsch
Davi L. Hirsch

K:\Kemper Valve & Fittings Corp\Oklahoma Litigation\Documents\Plaintiff's Response to Defendant's Motion to Dismiss or Transfer 03.06.08.doc